# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information associated with a cellular telephone number<br>901-402-4334 that is stored at premises controlled<br>by Bandwidth.com, Inc. | )<br>)<br>)   Case No.   20MJ3003<br>)<br>)<br>) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A-4, incorporated herein by reference.

located in the  Eastern  District of  North Carolina , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-4, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1951, 1591, 2421 | Use of Interstate Facility to Promote Prostitution; Sex trafficking by force, fraud, or coercion; Transportation generally |

The application is based on these facts:
See Attached Affidavit of FBI Special Agent Jonathan Reynolds, incorporated herein by reference.

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Jonathan A. Reynolds, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by  telephone  *(specify reliable electronic means)*.

Date:  July 23, 2020

*Judge's signature*

City and state:  San Diego, California     Hon. Michael S. Berg, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

I, Jonathan A. Reynolds, a Special Agent with the Federal Bureau of Investigation ("FBI"), being duly sworn, hereby declare as follows:

**INTRODUCTION**

1. I submit this affidavit in support of an application for a search warrant for Cingular Wireless/AT&T Wireless, headquartered at 11760 US Highway 1, Suite 300, North Palm Beach, FL 33408, Verizon Wireless, headquartered at 180 Washington Valley Road, Bedminster, NJ 07921, and Bandwidth.com INC, headquartered at 900 Campus Drive, Suite 100, Raleigh, NC 27606 as described in Attachments A-1, A-2, A-3, and A-4, to search the accounts associated with the following cellular telephone numbers:

   (a) 985-974-2842 (**Subject Account 1 – RANDLE - Cingular**),
   (b) 858-737-4546 (**Subject Account 2 – AF2 - AT&T**),
   (c) 850-865-5168 (**Subject Account 3 – AF2 - Verizon**),
   (d) 901-402-4334 (**Subject Account 4 – AF1 - Bandwidth**),

(collectively, the **"Subject Accounts"**), for subscriber information, telephone toll data, and cell-site geo-location information, for the period of December 1, 2019 up to and including March 3, 2020. There is probable cause that these records and information constitute evidence, fruits, and instrumentalities of violations of federal criminal law, namely, Title 18, United States Code, Sections 1952(a)(3) (Use of an Interstate Facility to Promote Prostitution), 1591 (Sex Trafficking by Force, Fraud, or Coercion), and 2421 (Transportation of Individuals to Engage in Prostitution), as described in Attachments B-1, B-2, B-3, and B-4. This affidavit and application are sought pursuant to Rule 41 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 2703(a), which applies to providers of electronic communication services. In this case, as will be shown below, Cingular Wireless/AT&T, AT&T Wireless, Verizon Wireless, and Bandwidth, provides electronic communication services in the form of cellular and wireless telephone service for the **Subject Accounts**.

## AGENT EXPERIENCE AND BACKGROUND

2. I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States, who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Titles 18 and 21 of the United States Code.

3. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), United States Department of Justice. I have been employed by the FBI since March of 2017, and I have participated in investigations involving violent crimes, bank robberies, human trafficking, child exploitation, organized crime, drug trafficking, and money laundering activities. I also received twenty-one weeks of training at the FBI Training Academy in Quantico, Virginia. During that training, I received instruction regarding a wide variety of investigative techniques that are commonly used in support of a wide range of the FBI's investigative priorities. The training included instruction regarding the use of sources, electronic surveillance techniques, law enforcement tactics, search and seizure laws and techniques, physical surveillance, forensic techniques, interviewing, and a variety of other subjects. Currently, I am assigned to the FBI San Diego Headquarters, Human Trafficking-1, in San Diego, California to work crimes against children, specifically, the sexual exploitation of children to include various illicit commercial sex activities. I have participated in investigations involving the exploitation of children for illicit commercial sex activity, human trafficking, various illegal activities of criminal gang members and have performed a variety of related investigative tasks.

4. The facts in this affidavit come from my personal observations, my training and experience, and information from other law enforcement officers and witnesses. Since this affidavit is for the limited purpose of obtaining the requested warrant, it does not set forth every fact that I or other law enforcement personnel may have learned in connection with this ongoing investigation.

//
//

## FACTS IN SUPPORT OF PROBABLE CAUSE

5. On March 3, 2020, at approximately 5:09 PM, Chula Vista Police Department (CVPD) received a report from the mother of an adult female (AF1) who reported that her daughter had fled a hotel in Chula Vista, California, and was hiding in the bathroom of a Black Angus Steakhouse. The mother reported that she had picked up AF1 and driven to the CVPD station. CVPD Officers Chavira, Sandoval, and McLean made contact with AF1 and her mother in the parking lot of the CVPD station.

6. AF1 told CVPD officers that she had been picked up by a man that she knew by the name of "Valentino," but who she later positively identified as RANDLE, a few weeks prior, in mid-February. AF1 stated that when RANDLE picked her up, he told her that she owed him $1,500 to take her back to Florida. When he took her to a hotel, another woman, AF2, was with him. Together, RANDLE, AF1, and AF2 traveled to California—first to Los Angeles, and then, a few days later, to San Diego.

7. In Los Angeles, AF1 stated that RANDLE first used online applications to set up "dates[1]" for both AF1 and AF2, and later took the two women to an area in Lynwood, California known for high prostitution where he had them engage in commercial sex transactions. After a short period of time, all three traveled to San Diego, where RANDLE rented Room 244 at the Motel 6 located at 745 E St., Chula Vista, California. AF1 stated that while RANDLE and AF2 were asleep, she fled the room and went to a nearby Black Angus Steakhouse, where her mother picked her up.

8. CVPD responded to the Motel 6 and contacted RANDLE and AF2 still at the motel. The front desk clerk confirmed that Room 244 had been rented by RANDLE. AF2 was found in Room 244. AF2 gave her consent to search the room. Inside the room CVPD officers found a bag containing multiple condoms, two dildos, multiple pairs of women's

---

[1] In my training and experience, I know that "date" is a term commonly used to refer to a commercial sex transaction.

3

panties, and lingerie[2], as well as a black Samsung Android cell phone in a black colored case marked "AT&T" (**Subject Account 1**), which was found on a dresser within the hotel room. AF2 stated that the phone belonged to RANDLE and provided the phone number of the device as **985-974-2842.** AF2 told CVPD Officers Monreal and Chavira that she had met a man named "Valentino" (who she later positively identified as RANDLE) on the website "Plenty of Fish" in September 2019. In January 2020, RANDLE picked up AF2 in Pensacola, Florida. They began to travel, stopping first in Huntsville, Alabama, and then on to various other cities, eventually arriving in Las Vegas, Nevada around February 14, 2020. In each city, RANDLE posted advertisements offering AF2 for commercial sex on websites such as skipthegames.com. AF2 stated that she would engage in commercial sex, and then give all the money she earned to RANDLE, who claimed that she owed him the money for picking her up in Florida, and for other expenses.

9. Investigators from the San Diego Human Trafficking Task Force (HTTF) were called. They spoke with both AF1 and AF2. AF1 largely confirmed her earlier statement, and further explained that while they were in Los Angeles, all of the "dates," during which she was required to perform oral sex or have sexual intercourse for money, were set up by RANDLE, including all prices and details. She stated that RANDLE would park his car and watch the two women as they walked the street. She stated that both she and AF2 had two or three "dates" a night, after which RANDLE took all the money. He would then tell AF1 how much he still owed her and deducted the cost of food, essentials and hotel rooms from the money she had earned. AF1 further stated that RANDLE took photographs of her and posted them in online advertisements.

10. AF2 also relayed to HTTF investigators much of what she had previously reported to CVPD officers. She further explained that at each location, RANDLE conducted all the posting of commercial sex advertisements, communicated with buyers, and set prices. She stated that RANDLE said the price for oral sex was $40.00-$60.00. For

---

[2] In my training and experience, I know that this is consistent with one who is engaging in commercial sex.

4

a quick visit for sexual intercourse, $60.00-$70.00; for a 30-minute visit for sexual intercourse the price was $80.00-$100.00; and for an hour of sexual intercourse (depending on the details) the price was $100.00-$200.00. She estimated she had been with approximately 4-5 men per day.

11. HTTF Investigators searched law enforcement databases and found an advertisement on plentyoffish.com for AF1. It contained multiple pictures of AF1, listed a location of Chula Vista, California, and included the phrase "Have fun with [AF1]." Based on my training and experience, and in light of both AF1 and AF2's statements regarding RANDLE's role in their travels, I believe that RANDLE posted the advertisement offering commercial sex with AF1.

12. Both AF1 and AF2 gave consent to the review of their cellular telephones. (Subject Accounts 2, 3, and 4.) In each, HTTF investigators located text messages between the women and RANDLE. In a conversation with AF1 dated March 2, 2020, AF1 texted "He gone," to which RANDLE responded, "Everything went smoothly?" and AF1 replied "yea." In a conversation with AF2 dated March 2, 2020, RANDLE told AF2 "get your money and then charge him to stay longer. Charge him to finish also..." RANDLE later asked AF2 "yall already did something?[3]" Also found in AF2's phone were photographs of greyhound tickets and hotel reservations corroborating their path of travel, and messages from various websites known for commercial sex.

13. RANDLE was read his rights and agreed to make a statement. He initially stated that the only money AF1 owed him, for gas, had already been paid; and that AF2 had never asked him to take her back to Florida, and claimed that he did not know what either AF1 or AF2 were doing for income. He then stated that the women did not work for him, but rather that he was watching their back and he was working for them. He denied posting advertisements for the women. Later, he claimed that AF2 was working doing virtual

---

[3] Based on my training and experience, I know that victims commonly confirm with their trafficker when a "date" begins and concludes.

5

online dating, and admitted that he was aware of the way they were making money and that he in fact did benefit from the money they earned and used to pay for things. He nonetheless denied acting as their "pimp" or any further involvement.

14. Investigators from HTTF obtained calls made by RANDLE while in custody in Los Angeles County. During those calls, RANDLE is heard providing instructions to both women on how they are to act and what to do with customers. Also during one call, RANDLE instructs AF2 not to allow AF1 to access the keys to their vehicle.

15. Investigators also obtained surveillance footage of the McDonald's restaurant near where AF1 was first reported to CVPD. That footage shows AF1 quickly leaving the Motel 6, and looking back over her shoulder, before entering the McDonald's. It then shows her again looking back in the direction of the Motel 6 before again quickly heading in the direction of the Black Angus.

16. Based on the facts above, there is reason to believe that RANDLE, using **Subject Account #1**, communicated with AF1 and AF2 (using **Subject Accounts 2, 3, and 4**). Additionally, given that people traditionally carry cellular phones on their persons and are rarely away from home without their cellular phones, and given the location where each of the phones was found, I believe that RANDLE possessed these cellular devices as he traveled with AF1 and AF2 from state to state for the purpose of commercial sex. I believe that the **Subject Accounts** will produce evidence that provides further corroboration of these events and details as provided by AF1 and AF2 in their initial statement to law enforcement.

17. Based on my training and experience, and my consultation with other law enforcement officers, I am aware that Cingular/AT&T, Verizon, and Bandwidth routinely collects and stores data for the electronic communication accounts to which it and other providers issue telephone numbers. The data includes: (i) subscribers' contact and billing information; (ii) detailed information concerning subscribers' incoming and outgoing telephone calls; (iii) detailed information concerning subscribers' outgoing direct calls, text

message, and SMS messages; and (iv) detailed information concerning cell-site geo-location data.

18. In particular, I know that cell phones connect to a provider's network through cell towers or cell sites. The particular tower or site may change as a phone moves from one location to another. Providers automatically record and retain this connection data as part of the subject account. Records and data identifying the towers or sites to which a phone connected therefore tend to identify the phone's and phone user's location at particular times.

19. Given these facts, I seek a warrant to search the **Subject Accounts** for the records and information in Attachments B-1, B-2, B-3, and B-4.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

20. The United States is unaware at this time of other attempts by the U.S. government to obtain this data by other means.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
JONATHAN A. REYNOLDS
Special Agent, FBI

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 23rd day of July 2020.

_____
HONORABLE MICHAEL S. BERG
United States Magistrate Judge

7

# ATTACHMENT A-4

# PROPERTY TO BE SEARCHED

Bandwidth.com, INC hosts the electronic communication account associated with the telephone number 901-402-4334 (**Subject Account 4**) that is the subject of this search warrant and search warrant application. Bandwidth.com, INC is an electronic communication service provider whose primary computer information systems and other electronic communications and storage systems, records, and data are located at, headquartered at 900 Campus Drive, Suite 100, Raleigh, NC 27606.

# ATTACHMENT B-4

## ITEMS TO BE SEIZED

III. <u>Service of Warrant</u>

The officer executing the warrant shall permit the Provider in Attachment A-4, as custodian of the electronic files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

IV. <u>Items to Be Seized</u>

Agents shall seize the following records, data, and information covering December 1, 2019 up to and including March 3, 2020 and maintained by the Provider for the subject account identified in Attachment A-4:

    a. Subscriber information, including:

        i. Names;

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers, including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii. Other subscriber numbers or identities; and

        viii. Means and source of payment (including any credit card or bank account number) and billing records.

      b. Records and other information about past wire or electronic communications sent or received by the subject account, including:

          i. the date and time of the communication;

          ii. the method of the communication;

          iii. the source and destination of the communication, such as the source and destination telephone numbers (call detail records), email addresses, or IP addresses; [and]

          iv. Cell site locations and sectors for all outgoing and incoming voice, SMS, MMS, and Data communications;

Which are evidence of violations of 18 U.S.C. §§ 1952(a)(3), 1591, and 2421.